IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| RAYMOND & ASSOCIATES LLC, | ) | Civil Action No. 19-01086-KD-MU |
| Debtor. | ) | |

## ORDER

This action is before the Court on appeal from the decision of United States Bankruptcy Judge Jerry C. Oldshue, Jr. sustaining objections and disallowing proof of claim number 32-2 filed by Claimant Candace LaForce (doc. 1, doc. 2, p. 260-268), the record on appeal (doc. 2). Appellant Candace LaForce's brief and appendix (doc. 9, 9-1). Appellee Trustee Terrie S. Owens' response (doc.11), and LaForce's reply (doc. 12). Upon consideration, and for the reasons set forth herein the Bankruptcy Court's decision is AFFIRMED.

I. Factual Background[1]

In September 2011, Candace and Raymond LaForce began divorce proceedings in the Circuit Court of Mobile County, Alabama.  On September 11, 2014, Mr. LaForce filed an individual Chapter 11, Debtor-in-Possession bankruptcy case, Case No. 14-02967.  Ms. LaForce received relief from stay to proceed with the divorce.

On June 16, 2015, Raymond & Associates, LLC filed a Chapter 11, Debtor-in-Possession bankruptcy case, Case No. 15-01883.  The LLC was wholly owned and operated by Mr. LaForce prior to filing the bankruptcy case.  Ms. LaForce did not seek or obtain relief from the automatic stay in the LLC bankruptcy.

---

[1] The Bankruptcy Court's findings of facts are not clearly erroneous. Accordingly, the findings of fact are incorporated herein.

On January 20, 2016, the Divorce Court entered a Divorce Decree wherein Ms. LaForce was awarded "25% of the company stock" in the LLC (doc. 2, p. 357).  The Divorce Court ruled that "[w]ith respect to the BP settlement claim owed to the company and/or parties, the Wife shall be awarded 40% of the net claim and the husband shall be awarded the remaining 60%." (doc. 2, p. 357).

On April 7, 2016, the Divorce Court amended the Divorce Decree.  In relevant part, the judgment states as follows:

2. With respect to the BP claim:

If this claim is a corporate asset, which has been listed in the Bankruptcy proceeding, then the Court does note that the husband shall be awarded 60% of the net BP claim, after the bankruptcy claims have been adjudicated by the Bankruptcy Court, which might have priority towards these BP claims. The wife shall be awarded the remaining 40%.

If this is a personal individual asset which is subject to the husband's individual bankruptcy creditors, the husband shall be awarded 60% of the net asset after superior bankruptcy creditors have been adjudicated by the bankruptcy court. The wife shall be awarded the remaining 40%.

(Doc. 2, p. 359).

On December 14, 2016, the LLC bankruptcy was converted to a Chapter 7 bankruptcy case and Terrie S. Owens was appointed as Trustee.  On January 26, 2017, Mr. LaForce's individual bankruptcy was converted to a Chapter 7 case and Lynn Andrews was appointed as Trustee.

On May 15, 2017, Ms. LaForce filed her initial Proof of Claim in the amount of $10,000 in the LLC bankruptcy. (doc. 9-1, p. 4-7; doc. 2, p. 353).

On September 6, 2017, the Bankruptcy Court in Mr. LaForce's individual bankruptcy case entered a Memorandum Opinion and Order granting Ms. LaForce's Motion for Authority

and Amended Application to Enforce Property Provisions of Judgment of Divorce (doc. 2, p. 360-370) (Authority Order).  The Bankruptcy Court found that "[w]hen Wife filed for divorce, equity converted the Debtor from the holder of legal title to the marital assets into a trustee of the marital assets until the divorce could be finally resolved" and that "the filing of the divorce proceedings created a constructive trust in the marital estate in favor of Wife pending a final divorce decree" (doc. 2, p. 366).  The Bankruptcy Court held that Ms. LaForce's "equitable interest in the marital estate would not come into Debtor's bankruptcy estate.  Since marital assets are held in a constructive trust for Wife's benefit, the bankruptcy estate 'succeeds only to the title and rights in the property that the debtor possessed . . . therefore . . . the estate will generally hold such property subject to the outstanding interest of the beneficiaries." (doc. 2, p. 370) (citations omitted).  The Bankruptcy Court also found that the "Judgment of Divorce is a domestic support obligation within the meaning of the [Bankruptcy] Code and is thus entitled to the most favorable treatment and paramount consideration when it comes to determining what constitutes Debtor's estate." (doc. 2, p. 368) (footnote omitted).

The division of marital property in the original Divorce Decree was summarized in the Factual and Procedural History in the Authority Order (doc. 2, p. 362).  In relevant part, the Bankruptcy Court acknowledged that the Divorce Court awarded Mr. LaForce 60% and Ms. LaForce 40%, of "Debtor/Husband's net BP settlement, after payment of creditors" (Id.).  The Bankruptcy Court acknowledged that the Divorce Decree was later amended to "address the forthcoming BP claim" (Id.).

The Trustee pursued the BP Claim in the Deepwater Horizon Economic and Property Damages Program for the benefit of the LLC's bankruptcy estate and recovered $4,600,000.  In

May 2019, the Trustee's motion for permission to pay certain creditors from the BP proceeds

was granted (doc. 2, p. 354). Ms. LaForce did not object to the motion.

On June 27, 2019, Ms. LaForce amended her claim in the LLC bankruptcy to claim

$1,417,360.00. (doc. 9-1, p. 9-11; doc. 2, p. 354). The Trustee and other creditors objected to the

amended claim. In support of the objection, the Trustee filed an affidavit indicating that the

funds collected and anticipated to be collected, including the BP funds, would not satisfy the

claims of the creditors of the LLC.

Ms. LaForce responded to their objections, and the matter was heard September 24, 2019

(doc. 2, p. 354-355). Ms. LaForce took the position that

> In the Individual Case, the Bankruptcy Court has already determined the Marital
> Property, including both the corporate and the individual BP Claims, was held in
> a pre-petition constructive trust and did not come into that bankruptcy estate
> because such interest was held in trust at the time the petition was filed. See
> Authority Order, pp. 7-8, 11.
>
> The logical extension of that determination is that, to the extent it was part of the
> Marital Property, the corporate BP Claim was also held in trust when the
> Corporate case was filed, such that the corporate BP Claim did not actually come
> into the bankruptcy estate in the Corporate Case when the petition was filed. It
> was still held in trust.

(Doc. 2, p. 211).

On November 20, 2019, the Bankruptcy Court sustained the Trustee's objections to Ms.

LaForce's amended claim (doc. 2, p. 260-268, Memorandum Opinion and Order Sustaining

Objections and Disallowing Claim). The Bankruptcy Court found this case involved a core

proceeding (doc. 2, p. 260). [2]  The Bankruptcy Court identified the issue presented as "whether

_____

[2] Citing 28 U.S.C. §157(b) (2)(A) & (B) ("(2) Core proceedings include, but are not limited to--
(A) matters concerning the administration of the estate; (B) allowance or disallowance of claims
against the estate or exemptions from property of the estate, and estimation of claims or interests
(Continued)

the Divorce Decree entitles the former spouse of a member of a limited liability company to a

priority claim in the Corporate Debtor's bankruptcy" (doc. 2, p. 262).  The Bankruptcy Court

first found that the Divorce Decree provided for a division of the net BP claim after adjudication

of the creditors' claims in the LLC bankruptcy but did not "carve out corporate assets" for Ms.

LaForce. Therefore, Ms. LaForce did not hold a priority claim in the LLC bankruptcy.

The Bankruptcy Court next found that if the Divorce Court intended to "carve out

corporate assets" and give Ms. LaForce priority treatment as the former spouse of a member of

the LLC, that provision in the Divorce Decree was not enforceable against the estate of the LLC.

Applying principles of statutory construction, the Bankruptcy Court found that the "plain

language of 11 U.S.C. § 101(14A)(A)(i)", which defines a domestic support obligation in

relevant part as an obligation "owed to or recoverable by" the debtor's spouse, "dictates that a

corporate entity cannot have a domestic support obligation" (doc. 2, p. 264). The Bankruptcy

Court explained that Ms. LaForce is not a former spouse of the LLC debtor and therefore, the

Divorce Decree did not entitle her to a priority claim in the LLC bankruptcy.

The Bankruptcy Court next found that the Divorce Court did not have "subject matter

jurisdiction to transfer assets that are not part of the marital estate" (doc. 2, p. 264).  The

Bankruptcy Court explained that under Alabama law, a corporation is a distinct entity considered

separately from "the individual who compose it and is not to be affected by the personal rights

and obligations and transaction of its stockholders", and the "same is true for an Alabama

Limited Liability Company" (Id.).  The Bankruptcy Court further explained that "Ms. LaForce's

---

for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the
liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death
claims against the estate for purposes of distribution in a case under title 11[.]")

status as a domestic support creditor" of Mr. LaForce did not entitle her to a direct claim against the LLC, but instead under Alabama law, her only recourse was against Mr. LaForce's financial interest in the LLC (doc. 2, p. 265).

The Bankruptcy Court also found the parties did not dispute that the BP claim was held by the LLC when the LLC bankruptcy was filed, and that Ms. LaForce did not obtain relief from the automatic stay to pursue any claim against the LLC. The Bankruptcy Court found that the BP proceeds were the property of the LLC bankruptcy estate, but overall, the LLC's estate assets were not sufficient to satisfy the claims of the LLC's creditors (Id.)

The Bankruptcy Court also addressed Ms. LaForce's reliance on the Authority Order entered in Mr. LaForce's individual bankruptcy case and found that it did not entitle her to a claim in the LLC bankruptcy case (doc. 2, p. 266). The Bankruptcy Court stated as follows:

> Ms. LaForce now asserts that this Court's ruling on such motion in the Individual Case (the "Authority Order") supports her claim to assets of the Corporate Debtor. The Authority Order held that Ms. LaForce's equitable interest in the marital estate would not come into the bankruptcy estate in Raymond LaForce's Individual Case. In re LaForce, 577 BR 908 (Bankr. S.D. Ala. 2016). This Court did not however, make any determination as to the assets comprising the marital estate; nor did it declare that the BP claim of the corporate entity constituted marital property. As discussed above, pursuant to Alabama law, the "marital estate" includes only the member spouse's transferable interest in the corporate entity which is in effect the member spouse's right to receive distributions. Further, the Authority Order entered in Raymond LaForce's individual case has no applicability to the Corporate Case. The parties and issues are not the same and this Court did not intend its ruling to have any applicability to the Corporate Case. Therefore, the Authority Order in the Individual Case does not provide a basis for Ms. LaForce's claim in this corporate proceeding.

(Doc. 2, p. 266).

Last, the Bankruptcy Court decided that public policy concerns support the decision that Ms. LaForce is not entitled to a priority claim in the LLC bankruptcy (doc. 2, p. 267). Without

attribution of improper motive in this case, the Bankruptcy Court acknowledged the potential for spousal collusion and abuse of the bankruptcy process if domestic court decisions awarding corporate assets to a former spouse were given priority over the corporate debtor's creditors.

Ms. LaForce now appeals the Bankruptcy Court's decision (doc. 2, p. 269, Notice of Appeal).

II. Standard of review

Ms. LaForce asserts that "[b]ecause the bankruptcy court engaged in no factfinding and instead decided a legal question based on stipulated facts, the order on appeal is akin to a summary judgment order, which this court reviews de novo." (doc. 9, p. 6).  She cites In re Optical Techs., Inc., wherein the bankruptcy court entered an order on summary judgment in an adversary proceeding where the debtors "sought to recover allegedly fraudulent transfers, preference payments and damages for breaches of fiduciary duty." 246 F.3d 1332, 1333 (11th Cir. 2001).  The Court of Appeals for the Eleventh Circuit explained:

> It is axiomatic that a bankruptcy court deciding a summary judgment motion, just like a district court, must determine whether there are any genuine issues of material fact. . . . Like a district court, a bankruptcy court may only grant summary judgment where there is no genuine issue of material fact. *See* Fed.R.Civ.P. 56(c). Our law is also clear that an appellate court reviews a bankruptcy court's grant of summary judgment *de novo.*

In re Optical Techs., Inc., 246 F.3d 1332, 1334 (11th Cir. 2001).

Although stipulated facts were provided to the Bankruptcy Court in this action, that does appear to convert objections to a Proof of Claim into a motion for summary judgment. The Court finds that the appropriate standard of review is the traditional standard applied on appeal of a core proceeding. In that regard, "[t]he District Court functions as an appellate court in reviewing decisions of the Bankruptcy Court. . . .This Court reviews the Bankruptcy Court's legal conclusions *de novo* but must accept the Bankruptcy Court's factual findings unless they are

clearly erroneous." In re Nilhan Fin., LLC, 2020 WL 1027637, at *3 (M.D. Fla. Mar. 3, 2020)

(addressing an appeal from the bankruptcy court's denial of reconsideration of an order

overruling objection to proof of claim) (citing Varsity Carpet Servs., Inc. v. Richardson (In re

Colortex Indus., Inc.), 19 F.3d 1371, 1374 (11th Cir. 1994) and In re JLJ Inc., 988 F.2d 1112,

1116 (11th Cir. 1993)); In re Piazza, 719 F.3d 1253, 1260 (11th Cir. 2013) ("In a bankruptcy

appeal, we sit as the second court of review of the bankruptcy court's judgment. . . . Like the

district court, we review a bankruptcy court's findings of fact for clear error and its conclusions

of law de novo.") (citations omitted); In re Toledo, 170 F.3d 1340, 1342 (11th Cir. 1999) (same);

CW Capital Asset Mgmt., LLC v. Burcam Capital II, LLC, 2014 WL 2864678, at *2 (E.D.N.C.

June 24, 2014) ("The standard of review is different when the district court reviews bankruptcy

court decisions in 'non-core proceedings.'"). "The factual findings of the bankruptcy court are

not clearly erroneous unless, in the light of all the evidence, we are left with the definite and firm

conviction that a mistake has been made." In re Whigham, 770 Fed. Appx. 540, 543-544 (11th

Cir. 2019) (citation omitted).  Overall, the reviewing court may affirm the Bankruptcy Court's

decision on any basis supported by the record. Big Top Koolers, Inc. v Circus-Man Snacks, Inc.,

528 F.3d 839, 844 (11th Cir. 2008).

     III. Analysis

     On appeal, Ms. LaForce argues that 40% of the BP claim, awarded to her in the Divorce

Decree, was a marital asset held in constructive trust for her benefit since 2011when the divorce

action was filed.  She argues that under the Divorce Decree, it doesn't matter whether her 40% of

the BP claim was Mr. LaForce's personal asset or an asset of the LLC, it never entered either

bankruptcy estate because of the pre-petition constructive trust and is not available for

distribution to creditors.  She argues that by disallowing her claim, the Bankruptcy Court

erroneously treated her 40% interest as if it were the LLC's bankruptcy estate property and subject to distribution to creditors.  Ms. LaForce concedes that corporate debtors do not have domestic support obligations, and does not argue that she is entitled to a priority domestic support obligation from the LLC, but instead asks this Court to reverse the Bankruptcy Court order because it allows the LLC's creditors to be paid with trust funds that are not an asset of the LLC bankruptcy. (Doc. 9)

Ms. LaForce also admits she did not seek relief from the automatic stay in this Bankruptcy but argues that she obtained relief in Mr. LaForce's personal bankruptcy to proceed with the divorce action. She asserts that the Authorization Order obtained in his bankruptcy also applies in this case. From this, she argues that the Bankruptcy Court already ruled that she has a constructive trust with regard to 40% of the LLC's BP claim, and that it never entered either bankruptcy estate. (Doc. 9).

Ms. LaForce also argues that reversing the Bankruptcy Court's decision would not offend public policy concerns.  She argues that Congress amended the Bankruptcy Code to favor persons like her, to whom a debtor may owe a domestic-support obligation, despite the potential for collusion and abuse.  She also argues that there are criminal penalties for bankruptcy fraud that would combat collusion or bankruptcy abuse, such that this is not a reason to disallow her claim. (Doc. 11).

The Trustee responds argues that the Divorce Decree is null and void as it relates to the LLC's assets because Ms. LaForce never obtained relief from stay in the LLC bankruptcy.  The Trustee also argues that the Divorce Court lacked authority to divide and distribute the LLC's assets.  The Trustee points out that the LLC was not a party in the divorce action, that the assets of the LLC were not marital property, that the Divorce Court had no authority to direct a member

of an LLC to transfer assets of the LLC, and that the Alabama Limited Liability Act limits a creditor's recovery to the LLC member's distributive share, not LLC assets. (Doc. 11)

The Trustee also argues that if the Divorce Court intended that Ms. LaForce receive a distribution from the LLC equal to 40% of the net BP claim, the Divorce Decree still contemplates payments to LLC creditors first; however, the LLC's assets are not sufficient, and there will be no distribution. Last, the Trustee argues that overturning the Bankruptcy Court's order would create precedent for use of divorce decrees as a method to avoid payment to rightful creditors of a corporate entity. (Doc. 11).

The Court has considered the parties' respective positions,[3] the Authorization Order and the Order on appeal, and finds that the Bankruptcy Court's decision is due to be affirmed. The Appellant has raised several arguments why the Bankruptcy order should be reversed. The Court finds none of her arguments persuasive and that only two merit discussion.

Ms. LaForce argues that whether the BP claim belongs to Mr. LaForce personally or was an asset of the LLC does not matter, because either way her a 40% interest in the BP claim was held in constructive trust and never entered either bankruptcy estate. She points out that under Alabama law, the Divorce Court must make an equitable distribution of marital property owned by the parties when the divorce action is filed, regardless of how legal title is held. To do so, a constructive trust arises over marital property when the divorce action is filed, subject to distribution in the future by the Divorce Court. As authority for her argument, Ms. LaForce cites to the Authorization Order in Mr. LaForce's personal bankruptcy. She asserts that "[b]ased on these legal principles and the Alabama divorce court's ruling, the bankruptcy court could -- and

---

[3] The Trustee and Ms. LaForce presented substantially similar arguments in their objection to claim and response as in their appellate documents.

did – 'equitably label [Candace's] interest as falling within a constructive trust by operation of

law,' whether the BP claim was 'a corporate asset' or a 'personal individual asset' of Raymond,

who wholly owned and operated the Debtor." (doc. 9, p. 12-13).

      First, Ms. LaForce's argument that 40% of the BP claim never entered either bankruptcy

estate is based in part on the theory that the Divorce Court had authority to treat the BP claim as

a marital asset subject to equitable division even though it was an asset of the LLC. As

previously stated, the parties do not dispute that the LLC owned the claim.  In Whaley v.

Whaley, the case cited by the Bankruptcy Court in support of its decision to disallow Ms.

LaForce's claim, the Alabama Court of Civil Appeals held as follows:

> With regard to K2, the husband points to § 10A–5A–5.01, Ala. Code 1975, a part
> of the Alabama Limited Liability Company Law of 2014, § 10A–5A–1.01 et seq.,
> Ala. Code 1975, which provides: "The only interest of a member that is
> transferable is the member's transferable interest." "Transferable interest" is
> defined as "a member's right to receive distributions from a limited liability
> company or a series thereof." Ala. Code 1975, § 10A–5A–1.02(s); see also Ala.
> Code 1975, § 10A–5A–5.02(b).
>
> In the amended divorce judgment, the trial court specified that the following were
> included in the award to the wife of K2: "its real property, equipment, contractual
> rights, intellectual property, proprietary information, patents, patent applications,
> processes, licenses, leases and other property rights." Because the trial court's
> judgment went beyond awarding the wife the husband's "transferable interest,"
> i.e., his right to receive distributions, we conclude that the trial court's judgment
> on this point was in error. See, e.g., Whittaker v. Whittaker, 228 W.Va. 84, 88,
> 717 S.E.2d 868, 872 (2011) (recognizing that the "family court does not have
> jurisdiction to order a limited liability company to transfer its assets").

Whaley v. Whaley, 261 So. 3d 386, 394–95 (Ala. Civ. App. 2017).

      Although the Divorce Court appears to have decided that the BP claim, whether owned

by the LLC or Mr. LaForce personally, was marital property subject to equitable division, that

11

decision does not supersede or amend Alabama law which governs what interests in an LLC may be transferred in a divorce.

Second, Ms. LaForce's argument is based in part on the theory that the Bankruptcy Court in the Authorization Order already decided that 40% of the BP claim was a marital asset held in constructive trust for her benefit regardless of whether it was owned by Mr. LaForce personally or the LLC.  The Court disagrees. The Bankruptcy Court summarized the Divorce Decree as awarding to Ms. LaForce "40% of Debtor/Husband's net BP settlement claim, after payment of creditors" (doc. 2, p. 362).   The Bankruptcy Court held that

> When Wife filed for divorce, equity converted the Debtor from the holder of legal title to the marital assets into a trustee of the marital assets until the divorce could be finally resolved. Accordingly, this Court finds that the filing of the divorce proceeding created a constructive trust in the marital estate in favor of Wife pending a final divorce decree.

> The question remains, though, when Debtor filed for bankruptcy relief, did his entire marital estate, including the inchoate property interests equitably belonging to Wife, fall into the bankruptcy estate, or does the existence of the constructive trust prevent the Wife's equitable interests from entering the bankruptcy estate? Given the most recent amendments to the Bankruptcy Code, this Court finds the latter to be correct – that property held by a debtor in trust for another does not enter the bankruptcy estate upon commencement of a bankruptcy case.

(Doc. 2, p. 366-367).

However, the Bankruptcy Court did not mention the LLC's bankruptcy, did not identify the BP claim as owned by the LLC, and made no finding as to the actual ownership of the BP claim.  Instead, to the extent that the BP Claim was considered, it was only in terms of "Debtor/Husband's net BP settlement claim, after payment of creditors[.]" (Id., p. 362) Importantly, the Bankruptcy Court did not find that the Authorization Order should apply to the LLC's bankruptcy case.

Moreover, in the Order on appeal, the Bankruptcy Court explained that the prior Authorization Order "did not however, make any determination as to the assets comprising the marital estate; nor did it declare that the BP claim of the corporate entity constituted marital property" and found that "the Authority Order entered in Raymond LaForce's individual case has no applicability to the Corporate case" (doc. 2, p. 266).   The Court finds no error with that decision.

IV. Conclusion

The Court has considered Ms. LaForce's grounds for appeal and finds no clear error in the Bankruptcy Court's findings of fact and no error in its conclusions of law.  The Bankruptcy Court properly determined that the Divorce Decree did not entitle Ms. LaForce to a priority claim in the LLC's bankruptcy.  Accordingly, the decision of the Bankruptcy Court is **AFFIRMED.**

**DONE** and **ORDERED** this 10th day of June 2020.

s/Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**